LORING, *Appellant*, v. ATTERBURY.

### Division One, March 23, 1897.

**Appellate Practice:** EQUITY: HUSBAND AND WIFE: SETTING ASIDE DEED: FINDING OF FACT.   Where the only issue in a suit to set aside a deed to the wife on the ground that it was made in fraud of the right of creditors of the husband, is a question of fact as to whether or not the land was bought with the husband's money, this court will not interfere with the finding of the chancellor, if a careful examination of all the evidence fails to show that he has not correctly determined that question.

*Appeal from DeKalb Circuit Court.*

AFFIRMED.

*Samuel G. Loring* for appellant.

(1) The judgment, execution and sheriff's deed in proof vested in this plaintiff all the right, title and

estate that Green B. Atterbury had in the lands in suit on July 17, 1894, and all the rights of James Ewart, the execution creditor. *Knoop v. Kelsey*, 121 Mo. 648; *Lionberger v. Baker*, 88 Mo. 447; *Ryland v. Callison*, 54 Mo. 513; *Wagner v. Low*, 15 Lawyers Rep. 785. (2) It is testified that Green B. Atterbury bought and paid for the lands in suit and had the title to said lands placed in his wife (this defendant). In the absence of evidence that the lands in suit were paid for with her separate money, the law presumes that it was paid for with the money of Green B. Atterbury. *Patton v. Bragg*, 113 Mo. 601; *Sloan v. Torry*, 78 Mo. 625; *White v. Clasby*, 101 Mo. 162; *Garrett v. Wagner*, 125 Mo. 458; *McClain v. Abshire*, 63 App. 340; *Jordan v. Buschmeyer*, 97 Mo. 94; *Walsh v. Ketchum*, 84 Mo. 427. (3) The rights of said Ewart, by the execution sale and sheriff's deed in proof, were merged in this plaintiff, and said deed to defendant was conclusively fraudulent as to him. *Guerney v. Moore*, 131 Mo. 668; *Knoop v. Kelsey*, 121 Mo. 648; *Ryland v. Callison*, 54 Mo. 513; *Lionberger v. Baker*, 88 Mo. 447; *Wagner v. Low*, 15 Lawyers Rep. 785. (4) There was no evidence that said lands were paid for with this defendant's separate money. Because of the opportunities which the marriage relations afford for the practice of fraud upon creditors, transactions between husband and wife should be closely scanned and their *bona fides* clearly established. *Holloway v. Holloway*, 103 Mo. 283; 8 Am. and Eng. Ency. of Law, 765; *Haxie v. Price*, 31 Wis. 86; *Booker v. Warrell*, 57 Geo. 235; *Horton v. Dewey*, 53 Wis. 413; *Kerney v. Powell*, 34 Kan. 22; *Robinson v. Clark*, 76 Me. 493; *Lypscomb v. Lyon*, 19 Neb. 571; *First Nat. Bank v. Bartlett*, 8 Neb. 329; *Kaeser v. Wagner*, 59 Iowa, 40. (5) Assuming the money that was paid for the lands in suit was made in the Lytle hotel, this money was Green B. Atter-

bury's. At common law the earnings of the wife belonged to the husband. 9 Am. and Eng. Ency. of Law, 817; *McCoy v. Hyatt*, 80 Mo. 135; *Plummer v. Frost*, 81 Mo. 428; Schouler on Dom. Rel., secs. 81, 162. (6) The wife's earnings may be secured to her separate use by the assent of her husband or by a settlement made either before or after marriage, or the husband may give his wife her earnings, but such gift must not defraud creditors. 9 Am. and Eng. Ency. of Law, 818; *Hozelbaker v. Goodfellow*, 64 Ill. 238; Bump on Fraud. Conveyances [3 Ed.], 252; Schouler on Dom. Rel., sec. 163; *Basham v. Chamberlin*, 7 B. Mon. Ky. 443; *Keeth v. Woombell*, 8 Pick. (Mass.) 211; *Cramer v. Redford*, 17 N. J. Eq. 367; 90 Am. Dec. 594. (7) And the burden lies upon the wife to clearly prove the gift. 9 Am. and Eng. Ency. of Law, 818; *Plummer v. Frost*, 81 Mo. 425; *Homell v. Henny*, 69 Iowa, 752; *Skellman v. Skellman*, 15 N. J. Eq. 478. (8) At common law all the earnings of Elmer Atterbury belonged to his father, Green B. Atterbury. Schouler on Dom. Rel., sec. 252; *Ream v. Watkins*, 27 Mo. 518. There is no evidence that Elmer Atterbury was, at the time his mother pretends she got $300 from him, emancipated by his father; all the evidence shows that he lived in his father's family and was a clerk in the post office, of which his father was postmaster, and there is no claim that his father paid him for his services.

*Kendall B. Randolph* and *William H. Rogers* for respondent.

(1) The voluntary payment of the amount due on a judgment, if made unconditionally and without any reservation of the right to keep the judgment alive, is unquestionably and irrevocably a satisfaction, no mat-

ter by whom the payment is made  *St. Francis Mill Co. v. Sugg,* 83 Mo. 476; *Hull v. Sherwood,* 59 Mo. 172.  (2) The sheriff's deed is void on its face.  It does not show that the sale was advertised in either a weekly or daily paper.  R. S. 1889, sec. 4941.  (3) The respondent was entitled to the sole use and benefit of the money she made out of the hotel.  Her profits or earnings were not liable for her husband's debts. R. S. 1889, secs. 6864, 6869; *Bartlett v. Umfried,* 94 Mo. 530; *Kidwell v. Kirkpatrick,* 70 Mo. 214; *Coughlin v. Ryan,* 43 Mo. 99.

BRACE, J.—This is a suit by petition in equity, brought by the plaintiff, purchaser at execution sale, of all the right, title and interest of Green B. Atterbury, to certain lots in the town of Maysville, DeKalb county, to set aside a deed executed by Robert T. Richardson and wife, dated the twentieth day of August, 1891, conveying said lots to the defendant, the wife of the said Green B. Atterbury, and praying that the title thereby acquired be vested in the plaintiff on the ground that said deed was executed to hinder, delay and defraud creditors of the said Green B. Atterbury.  From the judgment in favor of the defendant in the circuit court, the plaintiff appeals.

It appears from the evidence that on the ninth of October, 1888, one James Ewart recovered judgment against the said Green B. Atterbury for the sum of $2,473.55.  That execution thereon issued, and was levied upon the lots in question on the seventeenth of July, 1894, and that the same were sold by the sheriff at public sale on the twelfth of October, 1894, the plaintiff becoming the purchaser for the sum of $110 and securing a sheriff's deed therefor.

The evidence tended to prove that the judgment was rendered upon a promissory note, executed by

Green B. Atterbury, payable to one Lipscomb, and by him assigned to Ewart as collateral security. That at the time the judgment was recovered, the said Atterbury was and ever since has been insolvent. That the plaintiff was the attorney of said Ewart, brought the suit, and sued out the execution thereon; that since the judgment the said Lipscomb has paid off his indebtedness to Ewart, and that any money realized on the payment really belongs to Lipscomb, who is not a party to the suit, and seems to have had no hand in suing out the execution or bringing this suit. That some time prior to August, 1891, the defendant received as her distributive share in the estate of her deceased father the sum of $377.41, which went into the hands of her husband. That about the first of October, 1890, the defendant leased the hotel in Maysville, known as the "Lytle House," went into possession, and was running the same when the deed to her from Richardson was executed. That during that time her husband was postmaster of Maysville, and her son Elmer was carrying on a confectionery and cigar store in the front part of the postoffice. The hotel money was kept at the postoffice. The register of the hotel was headed "The New Lytle House, G. B. Atterbury, Prop.," as were the notices to guests put up in the house, and a card of similar import was inserted in the town newspaper. Some bills made on hotel account were also made out against G. B. Atterbury, and paid by him at the postoffice, but it was not shown that Mrs. Atterbury authorized them to be so made. The rent was also paid in a like manner. The evidence further tended to prove that the negotiations for the purchase of the lots were made by her husband and one Rogers, whose relation to the parties does not appear. That there was a mortgage on the premises for $350; that it was bought subject to the mortgage, and only $650 was

paid in cash for the property; that this money was paid by Mr. Atterbury, $350 out of her money in his hands, and $300 money advanced to her by her son Elmer. All the evidence in the case was introduced by the plaintiff, and at the close of it the court found the issues for the defendant and dismissed the plaintiff's bill.

This, of course, is not a case where a husband has been enabled to obtain credit by being clothed with the apparent ownership of property which the wife afterwards claims belongs to her for the reason that it was bought with her money, and the only question in the case was whether the lots in question were bought with the defendant's money. This was a question of fact to be determined by the chancellor like any other question of fact, by the preponderance of the evidence.

After a careful examination of all the evidence, we are not prepared to say that he has not determined this question of fact correctly, and deferring somewhat to the finding of the chancellor, as we are accustomed to do, the judgment of the circuit court will be affirmed, and it is accordingly so ordered. All concur except ROBINSON, J., absent.